ALLEN SAWYER  SBN: 173565
555 Capitol Mall, Suite 1245
Sacramento, CA 95814
Telephone: 916-447-2070
Facsimile:  916-447-2097
E-mail: allen@allensawyer.com
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAKIR KHAN, UMER HAYAT, ADNAN BILAL, ADIL ISMAEL, SAAD KHAN, BUSHRA SHAHEEN, NASAR KHAN, MIR AFZAL KHAN, SOMIYA BIBI, MUHAMMAD ASIF, SAFDAR KHAN, and MUHAMMAD BILAL KHAN,<br><br>Plaintiff,<br><br>v.<br><br>THE CITY OF LODI, CALIFORNIA, LODI MAYOR MIKEY HOTHI, AND THE CITY COUNCIL OF THE CITY OF LODI,<br><br>Defendant. | Case # _____<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF. |

The named Plaintiffs, on behalf of themselves and all other similarly situated voters, allege as follows:

**JURISDICTION AND VENUE**:

1.  This Court has jurisdiction to grant both declaratory and injunctive relief, pursuant to 28 U.S.C. §§ 2201 and 2202.

2.  This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331 and 1343 and because this action arises under the United States Constitution and federal statutory law.  It seeks relief for the Plaintiffs based on deprivations of constitutional and federally guaranteed statutory rights. Defendants have taken action, and refused to act, under

1

color of state law. Jurisdiction further vests pursuant to 42 U.S.C. §§ 1983 and 1985.

3.  This Court has supplemental jurisdiction over the claims arising under state law pursuant to 28 U.S.C. section 1367(a), as all state law claims for relief arise from the same nucleus of facts and form part of the same case or controversy under Article III of the United States Constitution.

4.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred in this district.

**INTRODUCTION AND FACTS**

5.  This is a putative class action pursuant to Fed. R. Civ. P. 23 seeking (a) injunctive and declaratory relief arising from Defendants' unlawful conduct in ostensibly removing Plaintiff Shakir Khan, from his duly elected position as a member of the Lodi City Council representing the voters of City Council District 4, b) prospective injunctive and declaratory relief requiring Defendants to continue to recognize Plaintiff Shakir Khan's rightful position as a member of said Council, c) to protect the interests of the voters who elected Shakir Khan to that position, and d) to enjoin Defendants from taking any action to schedule a special election to replace Shakir Khan on the said Council or ostensibly appoint another person to sit as a member of the Council in the place of Shakir Khan.

6.  Plaintiff, Shakir Khan, is the duly elected member of the City Council of the City of Lodi for City Council District 4 in San Joaquin County, California.

7.  Plaintiff is the only Muslim Member of the Council and his District includes most the Muslim voters in Lodi, California.

8.  The named and unnamed members of the putative class are voters who elected Shakir Khan to his position as a member of the City Council.

9.  Defendants are the City, the Mayor and the City Council of the City of Lodi, California.

10.  The Defendants are political opponents of Plaintiff Shakir Khan, who singly, and working together, conspired to remove Khan, from his position on the Council. (See: Exhibit A - Transcript of video recording, p. 3 [Khan: "I know for sure they just want me out of the office.".], hereafter "Transcript".)

11.  In furtherance of that common cause Defendants, along with officers of the San Joaquin

County Sheriff, developed claims against Khan alleging criminal election fraud in his election in 2020.

12. On February 16, officers of the San Joaquin County Sheriff's Office awakened Khan and arrested him. They told him he was arrested for election fraud. They refused to permit him to take his hearing aids and took him to the County Jail. (See: Transcript, p. 3.)

13. At the jail, Khan was booked and dressed in jail inmate clothing.

14. Then officers took him into an interrogation room where Mikey Hothi, the Mayor of the City of Lodi, awaited. Officers stood by and recorded the meeting on their body cameras.

15. The Mayor, acting on behalf of the Plaintiff's political opponents and as an agent of the police and prosecution, pretended to be there to give the Plaintiff advise.

16. It was apparent to Khan that the Mayor was working in concert with his accusers and the Sheriff's officers.

17. Khan indicated he wanted to talk to his wife, his family and his attorney. (See Transcript, p. 1 ["they haven't let me contact my wife or anything.") ; p. 2["Alan [Plaintiff's attorney] is gonna be a- appearing tomorrow, but I've still gotta contact family members, 'cause I have no contact right now.]")

18. The Plaintiff was held incommunicado prior to and throughout the encounter with the Mayor. (See: Transcript p. 2 [Mayor: "Oh, okay. How come, how come they didn't let you call anyone?" Shakir Khan: "I don't know. They just, they say you're (laughing) like, uh, high, you know, like they keep me away from everybody. Usually when you're in the lobby, they let you talk to family members, but they keep me inside, so hopefully I'll be able to call somebody."]

19. The Mayor had been working with the investigators who investigated and prepared the criminal case against Shakir Khan. (See attached, Declaration of Allen Sawyer in Support of Complaint for Declaratory and Injunctive Relief.)

20. The Mayor told him the whole thing was on the national news (Transcript, p. 2), and told him the best thing would be for him to resign. (See: Transcript, p. 3 [Mayor: "You know, how about you fight it, and if you're cleared of all charges, you'll win in next election;" Mayor: "I think you should strep aside.."])

21.  The Mayor offered to put out a statement saying he had talked to Khan and Khan agreed to resign. (See: Transcript p. 5 [Khan: "Yeah. I will talk with my lawyer yes... tomorrow, and then just have him, you know, make a statement. Is that better?"].)

22.  Despite Khan's protestations of innocence and his willingness fight the criminal case, the Mayor was insistent that he should resign, telling Khan he did not want his kids watching the media coverage, "Cause the, the longer you're on the city council, the longer these stories go. . .  " (Transcript, p. 4.)

23.  The Mayor then asked the Sheriff's officers for a pen and paper, which they immediately provided, and said he would write out something and ". . . if you agree to it, then we can just sign right here." (See: Transcript, p. 5.)

24.  The Mayor told Khan he had talked to various of Khan's supporters and they wanted him to resign.  He also said, "I talked to everybody.  I talked to the district attorney. I talked to Rex." (See: Transcript, p. 6-7.)

25.  The Mayor then wrote out the resignation document which stated:

>                         Mayor Mikey Hothi &
>                         Shak Khan have spoken
>                         & believe the best course
>                         of action at this time
>                         is for Shak Khan to resign
>                         from t he Lodi City Council
>                         fight the charges against him &
>                         clear his name. (See: Exhibit B,
>                         handwritten statement.)

26.  That text was followed by signature lines for both Mikey Hothi and Shakir Khan, which they both signed.

27.  Then the "interview" was completed, the Plaintiff was told he could have a telephone call. (See Transcript, p. 9 [Shakir Khan: "I can't, I can't use the phone?  Officer: "Yeah, we're doing that next. We'll take care of you right now.:])

1    28.      Immediately thereafter, when Plaintiff was allowed to make phone calls, he phoned his

2    attorney and then called the Mayor to inform him that he was not resigning.

3    29.      Upon release from the jail the next day, Plaintiff emailed the Lodi City Clerk and City

4    Manager and informed them that he was not resigning.

5    30.  On March 7, 2023, the Lodi City Council held a special session, excluding Councilman

6    Shakir Khan, to decide whether to fill the seat for District 4 by a special election in November of

7    2023, or to have the Council appoint another resident of District 4 to become the Council

8    Member for that Council District.  It was reported variously that the four Council Members in

9    attendance voted 3 to 1, or 3-0, to have the Council Members appoint a new City Council

10   Member.

11   31.      The City Council subsequently set a date to consider applications to replace Shakir Khan

12   and possibly vote to appoint a new Member to the Council to represent District 4.

13   **CLASS ALLEGATIONS**

14   32.  Plaintiff proposes a Class distinguished by the remedial and prospective relief sought in this

15   Complaint.

16   33.  The Class consists of the named Plaintiff voters and all voters in City Council District 4 in

17   Lodi, California.

18   34  This case may be appropriately maintained as a class action under Rule 23 of the Federal

19   Rules of Civil Procedure because all of the prerequisites set forth under Rule 23(a) and 23(b) are

20   met.

21   35.  Rule 23(a) Factors

22   Numerosity. Members of the Class are so numerous that joinder of all such members is

23   impracticable, if not impossible.  Although the Complaint identifies _[number]____  members of

24   the Class, there is reason to believe that all voters in District 4 have been deprived of their right to

25   representation by their elected Council Member as a result of the actions taken by the Mayor,

26   other Council members and the officers of the San Joaquin County Sheriff.

27   36.  Existence of Common Questions of Fact and Law. There are questions of law and

28   fact common to the Class with respect to the remedial and prospective relief. Specifically, such

common issues include, but are not limited to:

  - All members are registered voters of City Council District # 4 at the time of the 2020 election when Plaintiff was elected as their representative on the City Council.

  - All members are deprived of their rights to representation by their chosen elected representative by the Plaintiff's involuntary resignation.

  - These damages are caused by Defendants in relation to their misconduct conspiring to induce the involuntary resignation.

37.  Typicality. The Class members' claims have a common origin and share common bases with the Plaintiff and with each other.

38.  Adequacy. The Plaintiffs named in this complaint will fairly and adequately protect the interests of the Class because their interests are wholly common and consistent.

39. Rule 23(b) Factors

Fed. R. Civ. P. 23(b)(1). The prosecution of separation actions by the Class members would create a risk of inconsistent or varying adjudications with respect to individuals that would establish incompatible standards of conduct for parties opposing the class under Fed. R. Civ. P. (23(b)(1)(A).  In addition, the prosecution of separate actions would create a risk of adjudication with respect to individual members of the class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications, and subsequently impair, or impede their ability to protect their interests under Fed. R. Civ. P. (23)(b)(1)(B).

40.  Fed. R. Civ. P. 23(b)(2). Defendants have acted, refused to act, or likely will continue to act on grounds that apply generally to all class members by refusing to acknowledge Shakir Khan as the sitting member of the Lodi City Council representing District # 4.

41.  Final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

42.  Per Fed. R. Civ. P. 23(b)(3). There are common questions of law or fact common to all members of the Class that predominate over any questions affecting only individual members of the Class. A class action is superior to other available methods for fairly and efficiently adjudicating this controversy as provided for in Fed. R. Civ. P. 23(b)(3)(A) to (D).

43.  Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. The names and addresses of the members of the Class are available from County Registrar of Voters.

**GROUNDS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**

**Declaratory and Injunctive Relief for Violations of Amendments I and XIV of The U.S. Constitution 42 U.S.C. § 1983**

**Deprivation of Voting Rights**

44. Plaintiff hereby realleges and incorporates each and every allegation contained in each of the foregoing paragraphs of the complaint as though fully set forth herein.

45. The First Amendment guarantees the rights of citizens to participate in the political process, including the right to vote.

46. The Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

47. Both the Fourteenth Amendment of the United States Constitution and Article I, Section 7, of the California Constitution prohibit denial to persons of the equal protection of the laws. These constitutional provisions require that persons who are similarly situated receive like treatment under the law. .

48.The United States Supreme Court ruled in *Reynolds v. Sims* that because "the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized."

49.  Here, the voters in Lodi City Council District 4 are deprived of their right of representation by their elected representative and the voters of the other four Council Districts are not.

50. There exists a justiciable and triable dispute and controversy between the parties which is ripe for adjudication.  A declaratory judgment is appropriate and necessary, to avoid the potential of multiplicity of actions, to prevent irreparable harm, to ensure proper enforcement of the law, and to resolve a matter of public interest.

1  51. Plaintiffs have no adequate remedy at law and may suffer irreparable injury absent injunctive

2  relief. A preliminary and permanent injunction should issue prohibiting Defendants from

3  depriving Khan of his seat on the Council and depriving the voters of District 4 of their

4  representative.

5  **SECOND CLAIM FOR RELIEF**

6  **Declaratory and Injunctive Relief Based on Constitutional Provisions Requiring**

7  **Procedural and Substantive Due Process of the Law**

8  **(42 U.S. Code § 1983-Civil action for deprivation of rights)**

9  52.  Plaintiff hereby realleges and incorporates each and every allegation contained in each of

10  the foregoing paragraphs of the complaint as though fully set forth herein.

11  53. The conduct of the Mayor, the other Council members and the Sheriff's officers is

12  substantively unreasonable, irrational, arbitrary and/or capricious and lacking any real and

13  substantial relation to the object sought to be obtained, and violates procedural and substantive

14  due process of the law.

15  54.  Under the law of the Ninth Circuit, a 42 U.S. Code § 1983 claim alleging a procedural due

16  process denial requires proof of three elements: (1) a deprivation of a constitutionally protected

17  liberty interest; (2) a state action; and (3) constitutionally inadequate process.

18  55.  In this case, the first element is the constitutionally protected right to vote and have your

19  vote counted. The second element is state action by the defendants,  (the Mayor, the other

20  Council members and the Sheriff's officers ) failing and refusing to employ any required

21  procedure for removal of an elected representative from office and instead employing subterfuge,

22  implied threats and promises to induce an involuntary resignation of the elected official.

23  56.  The fundamental requirement of due process is an opportunity to be heard upon such notice

24  and proceedings as are adequate to safeguard the rights for which the constitutional protection is

25  invoked. (*Anderson Nat'l Bank v. Luckett*, 321 U.S. 233 (1944)

26  57.  Here, giving "due regard for the practicalities and peculiarities of the case" means

27  considering whether the procedures employed were reasonably calculated to protect the voters'

28  rights.

58.  If not otherwise enjoined, the Lodi City Council will appoint a person, not elected by the voters of Council District 4 to hold Plaintiff Shakir Khan's seat.  Such a procedure fails to protect the voters' rights of representation.

59.  There exists a justiciable and triable dispute and controversy between the parties which is ripe for adjudication. Plaintiff contends that the Defendants' conduct is invalid and void as violating due process of the law.

60.  Plaintiff is informed and believes, and on this basis alleges, that the Defendants deny such contentions and contend otherwise. A declaratory judgment is appropriate and necessary, to avoid the potential of multiplicity of actions, to prevent irreparable harm, to ensure proper enforcement of the law, and to resolve a matter of public interest.

61.  A preliminary and permanent injunction should issue prohibiting Defendants from denying the voters rights.

62. Plaintiff has no plain, speedy or adequate remedy in the ordinary course of law.

63.  This court should issue an injunction requiring the Lodi City Council to continue permitting Shakir Khan to exercise all the duties and powers of his elected office as a member of the Lodi City Council representing District 4.

**PRAYER**

WHEREFORE, Plaintiff, individually and on behalf of all named Plaintiffs and putative class members, prays

for relief as follows:

1. That this Court grant declaratory relief to Plaintiffs determining that the ostensible resignation of Plaintiff Shakir Khan from the Council is involuntary.

2. That this Court issue of an Injunction, enjoining Defendants and each of them from preventing Plaintiff Shakir Khan from exercising all the duties and powers of his elected office as a member of the Lodi City Council.

3.  That this Court issue of an Injunction, enjoining Defendants and each of them against taking any other action to deprive the voters of Lodi City Council District 4 of their right to representation by their duly elected Council Member.

4.  That this Court issue of an Injunction, enjoining Defendants and each of them from accepting applications for a newly appointed Council Member for  Lodi City Council District 4.

5.  That this Court issue of an Injunction, enjoining Defendants and each of them from scheduling or holding and special election to fill the Council seat for District 4.

6.  Imposing all other preliminary, permanent, declaratory, ancillary, and supplemental relief as alleged herein or otherwise pursued in this action;

7.  For attorney's fees incurred pursuing this relief,

8.  For costs of suit incurred herein; and

9.  For such other and further relief which the Court deems just and proper.

Date: March _24___, 2020


*Allen Sawyer*
_____
ALLEN SAWYER


**LEGAL ANALYSIS**

The document on its face purports only to be an agreement to the fact that Khan's resignation (presumably after consulting with his attorney) would be the best course.  An actual resignation would have said, "I resign," "I am resigning," "I hereby resign," or "I resign as of [a particular date or time].  Rather it says that the signatories, "believe the best course of action at this time is for Shak Khan to resign . . ."  To agree that resignation is the best course is not the same as to commit to that course.  Nor an agreement to that effect, in and of itself, the accomplishment of that course of action.

It could be argued that it was an offer to resign.  The tender and acceptance of an offer of resignation is a matter of contract. (*Leithliter v. Board of Trustees* (1970) 12 Cal.App.3d 1095, 1099; *Sherman v. Board of Trustees* (1935) 9 Cal.App.2d 262 [49 P.2d 350].)  California courts have held that "[r]esignations are contractual in nature" (*Mahoney v. Board of Trustees* (1985) 168 Cal.App.3d 789.) "As such, a resignation is an offer which may be withdrawn prior to its acceptance." (*Ibid*.; see Civ. Code, § 1586, *T. M. Cobb Co. v. Superior Court* (1984) 36 Cal.3d 273, 278.)  In other words, one "has a right to rescind a resignation unilaterally like any

1   contractual offer prior to its acceptance." (*Ulrich v. City & County of San Francisco* (9th Cir.

2   2002) 308 F.3d 968, 975.)

3        Here, the Plaintiff immediately withdrew and revoked any offer to resign long before such

4   offer was accepted.   The jailhouse meeting with the Mayor was completed at about 4:15 p.m.

5   Khan was permitted by the Sheriff's officers to make phone calls shortly thereafter.  He called his

6   attorney for a brief conversation.  Then he called the Mayor, about ten minutes after the

7   "resignation" document was signed, and told him he was not resigning and did not authorize the

8   Mayor or anyone else to issue any statement on his behalf.

9        When he was released from jail the next day, Khan sent emails to the City Clerk and the

10  City Manager telling them he did not resign or authorize the release of any statement on his

11  behalf.  Thereafter, when Khan next attended a meeting of the Lodi City Council to represent his

12  constituents, the Council refused to allow him to participate.

13       Lodi City Ordinances, Title 2, Chapter 2 - City Council Meetings, Section 2.04.060

14  provides:

15          A majority of all members elected to the council shall constitute a quorum at any
            regular or special meeting of the council.  Unless otherwise required by law, a
16          simple majority of the members present may take action or adopt ordinances or
            resolutions.
17

18  In this matter, the City Council not only did not accept Khan's alleged offer to resign before he

19  rescinded the offer, they never voted to "take action" on Khan's offer at all.  Thus, Khan remains

20  the duly elected representative of the voters in Lodi City Council District 4 and his constituents

21  are deprived of their rights to representation.

22       Khan's decision to sign a statement agreeing to resign from the City Council was not

23  knowing, intelligent and voluntary, either as a practical matter or as a legal matter.  It was a

24  product of subterfuge, implied threats and promises.  First, the Mayor was not there to give Khan

25  friendly advise.  The Mayor had been working with investigators to bring the criminal charges.

26  The Sheriff's officers did not let him into the jail and set him up in an interrogation room with

27  Khan for a friendly chat.  Rather, the Mayor was working with officers to get Khan to resign,

28  thereby creating the narrative that he did so because he knew he was guilty.  Khan was

1   disoriented, deprived of his hearing aid, under the threat of criminal prosecution, facing a lengthy

2   prison sentence and held incommunicado in a police dominated atmosphere—namely, a small,

3   windowless room in the bowels of the police station. (*Smith v. Clark* (2015) 612 Fed. Appx. 418.)

4          It could not have escaped Khan's attention that the Mayor was working with the police and

5   prosecution.  The police arrested and accused him, the police isolated him from everybody else

6   but engineered an in-custody meeting with the Mayor, the police stood by and watched the entire

7   meeting with the Mayor and recorded it on their body cameras.  When the Mayor was unprepared

8   to immediately draft an agreement to resignation for Khan to sign he asked the police for a pen

9   and piece of paper. (Video 4:30)  An officer then provided pen and paper to the Mayor within 26

10  seconds. (Video 4:56.) (See Declaration of Allen Sawyer, attached.)

11         This Court cannot doubt that the Mayor was working with the police and was an agent of

12  the police.  It goes without saying that police do not allow an inmate's friends to visit them in jail,

13  not speaking through glass on a telephone, but set up in a private room, albeit a room normally

14  used for interrogations.

15         If an agent of the police or prosecution, by their words or actions elicit incriminating

16  statements from an in-custody suspect, that is interrogation and requires Miranda warnings.

17  Implicit in the definition of "interrogation" is that (1) the suspect is talking to the police <u>or an</u>

18  <u>agent of the police</u>, and (2) the suspect is aware that he is talking to the police or one of their

19  agents. (*Rhode Island v. Innis* (1980) 446 U.S. 291, at p. 295 [speaking with police]; *In re I.F.*

20  (2018) 20 Cal.App.5th 735, 773 [same]; *People v. Ghent* (1987) 43 Cal.3d 739, 750–751

21  [speaking with psychiatrist retained by the police]; *People v. Sanchez* (1983) 148 Cal.App.3d 62,

22  69–70 [speaking with doctor working with police in presence of police]; see also *Estelle v. Smith*

23  (1981) 451 U.S. 454, 467–468 speaking with prison psychiatrist pursuant to court order].)

24         In *People v. Sanchez* (1983) 148 Cal. App. 3d 62, 69, for another example, a doctor

25  conducting a physical exam of a defendant, who also asked him questions which elicited

26  incriminating responses, was found to be an agent of law enforcement. (Citing *People v. Walker*

27  (1972) 29 Cal.App.3d 448, 453, and *Estelle v. Smith* (1981) 451 U.S. 454.)

28         Here, the Mayor was interviewing a defendant to secure evidence on behalf of the police.

1   It could be argued that, if the Mayor and the police planned only to obtain Khan's consent to retire

2   from the City Counsel, that would be a civil matter and would not require a Miranda warning,

3   However, self-incriminating statements given by a jailed defendant during a civil investigation are

4   also inadmissible in a criminal prosecution when the defendant is not given Miranda warnings.

5   (*Mathis v. United States* (1968) 391 U.S. 1, Thus, such statements are involuntary as a matter of

6   law.  Here, the resignation document is a self-incriminating statement.

7        Here, the Mayor promoted the idea that he was there to give Khan advise, but, in fact he

8   was there to promote the agenda of the police.  It may well be said that his primary intention was

9   to get Khan to agree to resign, but any such agreement would be an incriminating statement.  That

10  is why the Mayor insisted on getting it in writing.

11       Though the Mayor did not directly threaten Khan, he told him he had talked to numerous

12  players in the drama and they all thought it would be a good idea for him to resign. (See:

13  Transcript. P. 6-7.)  Then he said he had talked to the District Attorney, and implied that the D.A.

14  also wanted Khan to resign.  It is not known whether the Mayor had actually talked to the District

15  Attorney, or whether the D.A. actually said he wanted Khan to resign.  However, the Mayor,

16  acting as an agent of the police and prosecution, was implying that, Khan should give the District

17  Attorney what he wanted.  It was implied that, if he did not, it would go worse for him in the

18  criminal prosecution.  If he did what the D.A. wanted, it would go better.

19       A statement to law enforcement, or their agents, is deemed involuntary if procured by an

20  express or implied promise of benefit beyond that naturally flowing from a truthful statement, or

21  by an express or implied threat that the failure to make a statement will result in consequences

22  adverse to the suspect. (*In re G*. (1975) 53 Cal. App. 3d 198, 202.)

23       The document which the Mayor prepared with the help of police, and had Khan sign

24  implicated him in the criminal case for election fraud.  And that was the whole purpose of the

25  Mayor's contact - to get Khan to sign the resignation paper which incriminated him.  At a trial of

26  the charges of election fraud, the fact that Khan agreed to resign tends in reason to prove

27  consciousness of guilt.  Evidence of that will be admissible against Khan in a criminal trial.  But,

28  before eliciting Khan's agreement and his signature on that document, nobody advised him of his

rights per *Miranda v. Arizona* (1966) 384 U.S. 436.  When the Mayor began to talk about Khan immediately resigning and the Mayor putting out a statement saying he had so agreed, Khan indicated that he wanted to talk to his attorney, and would talk to his attorney the next day. Thus, he clearly indicated he wanted to consult with his attorney before signing the incriminating document.

Khan was understandably very afraid of the significant criminal consequences he faced and wanted to curry favor with the Mayer, the police and the D.A.  He even thanked the Mayer for coming to "advise" him. (Transcript, p. 5.)  But he also knew the Mayer was working with the police, and apparently with the District Attorney.  So he did what many criminal defendants do, particularly those not advised of their rights to an attorney and to remain silent, he gave them what they wanted.

Thus, an arrested defendant was held incommunicado in the proverbial bowels of the police station, confronted by an agent of the police and prosecution, allowed to speak to no one except that police agent who was sent there to obtain an incriminating statement with the defendant's signature.  That police agent ignored the un-Mirandized criminal defendant's statement that he wanted to talk to his attorney and then elicited a statement in writing incriminating him. That is involuntary as a matter of law.

Date: March _24___, 2020

*Allen Sawyer*
N. ALLEN SAWYER

14

1  ALLEN SAWYER  SBN: 173565
   555 Capitol Mall, Suite 1245
2  Sacramento, CA 95814
   Telephone: 916-447-2070
3  Facsimile:  916-447-2097
   E-mail: allen@allensawyer.com
4  Attorney for Plaintiff

5

6

7

8              IN THE UNITED STATES DISTRICT COURT
9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10 SHAKIR KHAN, UMER HAYAT,              Case # _____
   ADNAN BILAL, ADIL ISMAEL, SAAD
11 KHAN, BUSHRA SHAHEEN, NASAR          DECLARATION OF ALLEN SAWYER
   KHAN, MIR AFZAL KHAN, SOMIYA         IN SUPPORT OF COMPLAINT FOR
12 BIBI, MUHAMMAD ASIF, SAFDAR          DECLARATORY AND INJUNCTIVE
   KHAN, and MUHAMMAD BILAL             RELIEF.
13 KHAN,

14                     Plaintiffs,
15 v.

16 THE CITY OF LODI, CALIFORNIA,
   LODI MAYOR MIKEY HOTHI, AND
17 THE CITY COUNCIL OF THE CITY OF
   LODI,
18
                      Defendant.
19

20 I, Allen Sawyer, declare,

21 1.     That I am an attorney at law admitted to the practice of law in all the Courts of the

22 State of California and in the Federal District Court for the Eastern District of California.

23 2.     I am the attorney for Plaintiff Shakir Khan in the above-entitled matter.

24 3.     I have reviewed the attached Exhibits and attest that they are true, correct and

25 complete copies of the documents they purport to be.

26 4.     I have reviewed the Transcript of the video-taped meeting between Plaintiff Shakir

27 Khan and Lodi Mayor Mikey Hothi on February 16, 2023, at the San Joaquin County jail,

28 and attest that it is an accurate record of the meeting and all statements made during that

                                    15

meeting.

5.      I have reviewed the video taped recording of that meeting and attest that the time stamp at the time the Mayer asked officers to get him a pen and paper during that meeting was 4:30 (four minutes and thirty seconds) and that the time stamp for the time an officer handed the Mayer a pen and paper was 4:56 (four minutes and fifty six seconds.), 26 seconds later.

6.      I have reviewed and observed various media reporting about the arrest and charges of Shakir Khan, both print and video publicity, and have determined that the Lodi Mayer has represented in interviews with the media that he was cooperating with police in the investigation which led to the arrest and criminal charges against Plaintiff Shakir Khan for election fraud.

7.      On March  7, 2023, the Lodi City Council held a special session.  At that session the Council did not prevented Shakir Khan's from sitting on the Council.

8.      The Council then voted on whether to fill the seat for Council District 4 by a special election in November of 2023, or to have the Council appoint another resident of District 4 to become the Council Member for that Council District.

9.      It has been reported variously that the four Council Members in attendance voted to have the Council Members appoint a new City Council Member.

10.     The Council has now announced that they will be accepting applications from candidates for Khan's seat on the Council as of March 17, and that, at a Council meeting on March 29, 2023, they will interview applicants and the "current Council" may vote and install a replacement Council Member to represent District 4.

11.     I declare the above to be true of my personal knowledge under penalty of perjury under the laws of the United States.

Signed this _24th__ day of March, 2023,

at Sacramento, California

_Allen Sawyer_____
Allen Sawyer

16