ALLEN SAWYER  SBN: 173565
555 Capitol Mall, Suite 1245
Sacramento, CA 95814
Telephone: 916-447-2070
Facsimile:  916-447-2097
E-mail: allen@allensawyer.com
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAKIR KHAN, UMER HAYAT, ADNAN BILAL, ADIL ISMAEL, SAAD KHAN, BUSHRA SHAHEEN, NASAR KHAN, MIR AFZAL KHAN, SOMIYA BIBI, MUHAMMAD ASIF, SAFDAR KHAN, and MUHAMMAD BILAL KHAN,<br><br>Plaintiffs,<br>v.<br><br>THE CITY OF LODI, CALIFORNIA, LODI MAYOR MIKEY HOTHI, AND THE CITY COUNCIL OF THE CITY OF LODI,<br><br>Defendant. | Case # _____<br><br>NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION.<br>(Federal Rules of Civil Procedure, Rule 65.)<br><br>Date:<br>Time:<br>Dept: |

To the Clerk of the Court and to all Defendants and their counsel:

NOTICE IS HEREBY GIVEN that on _____, 2023, at _____ \_\_.m, in Dept. \_\_\_\_ of the above Court Plaintiffs, will move the Court to issue a Preliminary Injunction in the above-entitled matter.  The Motion will seek orders enjoining Defendants and each of them from preventing Plaintiff Shakir Khan from exercising all the duties and powers of his elected office as a member of the Lodi City Council.  It will further request an injunction to prevent Defendants from accepting applications for a position as a newly appointed Council Member for Lodi City Council District 4 in the place of Shakir Khan and enjoining Defendants and each of them from scheduling or holding and special election to fill the Council seat for District 4.

1

1    This Motion is brought pursuant to UCS Federal Rules of Civil Procedure, section 65, on the grounds that Plaintiffs will likely prevail on their claims that Defendants sought to unlawfully remove Plaintiff Shakir Khan from his rightfully elected position on the Lodi City Council. Khan is now deprived of his right to exercise all the duties and powers of his elected office as a member of the City Council and the voters are deprived of their right of representation by their elected representative. All these deprivations will become permanent on or before the anticipated date upon which the remaining Council members will choose another person to take over Shakir Khan's position on the Council as early as March 29, 2023.

This application is based on the memorandum of points and authorities and the declarations filed simultaneously herewith, as well as the Complaint for Declaratory and Injunctive Relief, all Exhibits filed therewith and such argument that this Court may authorize.

Dated: March _24___, 2023

_Allen Sawyer_
Allen Sawyer

ALLEN SAWYER  SBN: 173565
555 Capitol Mall, Suite 1245
Sacramento, CA 95814
Telephone: 916-447-2070
Facsimile:  916-447-2097
E-mail: allen@allensawyer.com
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAKIR KHAN, UMER HAYAT, ADNAN BILAL, ADIL ISMAEL, SAAD KHAN, BUSHRA SHAHEEN, NASAR KHAN, MIR AFZAL KHAN, SOMIYA BIBI, MUHAMMAD ASIF, SAFDAR KHAN, and MUHAMMAD BILAL KHAN,<br><br>                            Plaintiffs,<br>v.<br><br>THE CITY OF LODI, CALIFORNIA, LODI MAYOR MIKEY HOTHI, AND THE CITY COUNCIL OF THE CITY OF LODI,<br><br>                            Defendant. | Case # _____<br><br>POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION.<br><br>Date:<br>Time:<br>Dept: |

The named Plaintiffs, on behalf of themselves and all other similarly situated voters, allege as follows:

**STATEMENT OF FACTS:**

Plaintiffs have filed herein a the Complaint for Declaratory and Injunctive Relief and now seek a Preliminary Injunction based upon the following facts:

Plaintiff, Shakir Khan, is the duly elected member of the City Council of the City of Lodi, California for City Council District 4 and is the only Muslim Member of the Council. The named and unnamed members of the putative class are voters who elected Shakir Khan to his position as a member of the City Council.  Khan's political opponents sought to remove him from that office.

Mikey Hothi, the Mayor of Lodi, participated with Officers of the San Joaquin County Sheriff to investigate allegations and bring criminal charges of election fraud during his election in 2020. against Khan.

Their investigation culminated in felony charges against Khan and he was arrested on February 16, 2023 by Sheriff's Officers.  The Officers awakened Khan, told him he was arrested for election fraud, refused to permit him to take his hearing aids and booked him into the County Jail. Officers dressed Khan jail inmate clothing and then took him to an interrogation room where Mikey Hothi was waiting for him. While the Mayor questioned and discussed the matter with Khan, the Officers stood by and recorded the meeting on their body cameras.

The Mayor, acting on behalf of the police and prosecution, pretended to be there to give the Plaintiff advise.  It was apparent to Khan that the Mayor was working in concert with his accusers and the Sheriff's officers. Khan indicated he wanted to talk to his wife, his family and his attorney saying "they haven't let me contact my wife or anything."  He stated that he would be speaking to his attorney, Allen Sawyer, at the court appearance the next day.  The Plaintiff was held incommunicado prior to, and throughout, the encounter with the Mayor.

The Mayor, who had been working with the investigators to prepare the criminal case made every effort to convince Khan to sign a written agreement to resign from the City Council. He told Khan the whole thing was on the national news, told him he did not want his kids watching the media coverage, "Cause the, the longer you're on the city council, the longer these stories go. . ."  He told Khan the best thing would be for him to resign, saying "You know, how about you fight it, and if you're cleared of all charges, you'll win in next election;"

The Mayor told Khan he had talked to various of Khan's friends and they thought he should resign.  He said, "I talked to Steve.  I talked to Janice. I talked to everybody." He said, "They think you need to resign too."  Then he said he had talked to the District Attorney.

The Mayor offered to put out a statement saying he had talked to Khan and Khan agreed to resign.  Khan said, "Yeah. I will talk with my lawyer yes... tomorrow, and then just have him, you know, make a statement."  Despite Khan's protestations of innocence and his willingness to fight the criminal case, the Mayor was insistent that he should resign. It is not known whether the

Mayor had actually talked to the D.A. or whether the D.A. had said she wanted Khan to resign, but that was the impression Khan was given.  Of course he thought if he gave the D.A. what he wanted, the criminal case would go better for him and, if not, it would go worse.

The Mayor then asked the Sheriff's officers for a pen and paper, which they immediately provided, and said he would write out something and ". . . if you agree to it, then we can just sign right here."

The Mayor then wrote out the resignation document which stated:

> Mayor Mikey Hothi &
> Shak Khan have spoken
> & believe the best course
> of action at this time
> is for Shak Khan to resign
> from t he Lodi City Council
> fight the charges against him &
> clear his name. (See: Exhibit B,
> handwritten statement.)

That text was followed by signature lines for both Mikey Hothi and Shakir Khan, which they both signed.  Then the "interview" was completed, the Plaintiff was told he could have a telephone call.

The hand written document prepared by the Mayor is not a legally enforceable resignation.  It was only an offer which was not supported by any consideration and which Shakir Khan almost immediately rescinded.  No one with any authority to accept an offer to resign ever accepted it.

As soon as the Mayor left the jail, Khan was allowed to make phone calls.  He immediately called the Mayor and told him he was not resigning and did not authorize the release of any statement "on his behalf."  The next day, Khan informed the City Manager and the City Clerk of the same by email. (Exhibit A, Declaration of Shakir Khan.)

Days after Khan repudiated and rescinded his offer to resign, on March 7, 2023, the Lodi

City Council held a special session. At that session the Council did not purport to accept Khan's resignation but excluded him from attendance. The Council then voted on whether to fill the seat for District 4 by a special election in November of 2023, or to have the Council appoint another resident of District 4 to become the Council Member for that Council District. It has been reported variously that the four Council Members in attendance voted 3 to 1, or 3-0, to have the Council Members appoint a new City Council Member.

**Law and Argument:**

**A. Khan's agreement that resignation would be the best course does not constitute a resignation and he is still the duly elected representative of the Voters of Council District 4:**

Since the Mayor and Shakir Khan signed the agreement in the jail, the City Council has excluded Khan from their meetings and refused to permit him to carry out any of the duties or powers of his office. They have publically claimed that he resigned from the Council and have taken steps to replace him. They do so in reliance on the claim that the hand written agreement Khan and the Mayor signed was his resignation. It was not. He has publically stated he did not resign.

The agreement must be understood in the context of the conversation. After repeatedly imploring Khan to resign, the Mayor proceeded:

> Mayor (04:06):
> Yeah, I, I think just save yourself the headache. We'll, I'll, you know, I could, I'm happy to put out a statement saying I talked to Council Member Khan. He agreed to resign. And I think that's the right course of, I'm not gonna say anything to make it [inaudible 00:04:18].
>
> Shakir Khan (04:17):
> **Yeah. I will talk with my lawyer yes**... tomorrow, and then just have him, you know, make a statement. Is that better?
>
> Mayor (04:23):
> Yeah. Yeah. Well, uh, so if it's okay with you, I'd like to just, um, can I get a, a pen and a piece of paper?
>
> Let, let me just write out something for you. (Exhibit A Emphasis added.)

The document on its face purports only to be an agreement to the fact that Khan's resignation (presumably after consulting with his attorney) would be the best course. An actual resignation would have said, "I resign," "I am resigning," "I hereby resign," or "I resign as of [a

6

particular date or time]. Rather it says that the signatories, "believe the best course of action at this time is for Shak Khan to resign . . ." To agree that resignation is the best course is not the same as to commit to that course. Nor an agreement to that effect, in and of itself, the accomplishment of that course of action.

It could be argued that it was an offer to resign. The tender and acceptance of an offer of resignation is a matter of contract. (*Leithliter v. Board of Trustees* (1970) 12 Cal.App.3d 1095, 1099; *Sherman v. Board of Trustees* (1935) 9 Cal.App.2d 262 [49 P.2d 350].) California courts have held that "[r]esignations are contractual in nature" (*Mahoney v. Board of Trustees* (1985) 168 Cal.App.3d 789.) "As such, a resignation is an offer which may be withdrawn prior to its acceptance." (*Ibid*.; see Civ. Code, § 1586, *T. M. Cobb Co. v. Superior Court* (1984) 36 Cal.3d 273, 278.) In other words, one "has a right to rescind a resignation unilaterally like any contractual offer prior to its acceptance." (*Ulrich v. City & County of San Francisco* (9th Cir. 2002) 308 F.3d 968, 975.)

Here, the Plaintiff immediately withdrew and revoked any offer to resign long before such offer was accepted. The jailhouse meeting with the Mayor was completed at about 4:15 p.m. Khan was permitted by the Sheriff's officers to make phone calls shortly thereafter. He called his attorney for a brief conversation. Then he called the Mayor, about ten minutes after the "resignation" document was signed, and told him he was not resigning and did not authorize the Mayor or anyone else to issue any statement on his behalf.

When he was released from jail the next day, Khan sent emails to the City Clerk and the City Manager telling them he did not resign or authorize the release of any statement on his behalf. Thereafter, when Khan next attended a meeting of the Lodi City Council to represent his constituents, the Council refused to allow him to participate.

Lodi City Ordinances, Title 2, Chapter 2 - City Council Meetings, Section 2.04.060 provides:

> A majority of all members elected to the council shall constitute a quorum at any regular or special meeting of the council. Unless otherwise required by law, a simple majority of the members present may take action or adopt ordinances or resolutions.

In this matter, the City Council not only did not accept Khan's alleged offer to resign before he rescinded the offer, they never voted to "take action" on Khan's offer at all.  Thus, Khan remains the duly elected representative of the voters in Lodi City Council District 4 and his constituents are deprived of their rights to representation.

**B. Plaintiff Khan's agreement that resignation would be the best course was involuntary:**

Khan's decision to sign the agreement was not knowing, intelligent and voluntary, either as a practical matter or as a legal matter.  It was a product of subterfuge, and implied threats and promises.  First, the Mayor was not there to give Khan friendly advise.  The Mayor had been working with investigators to bring the criminal charges.  The Sheriff's officers did not let him into the jail and set him up in an interrogation room with Khan for a friendly chat.  Rather, the Mayor was working with officers to get Khan to resign, thereby creating the narrative that he did so because he knew he was guilty.  Khan was disoriented, deprived of his hearing aids, under the threat of criminal prosecution, facing a lengthy prison sentence and held incommunicado in a police dominated atmosphere—namely, a small, windowless room in the bowels of the police station. (*Smith v. Clark* (2015) 612 Fed. Appx. 418.)

It could not have escaped Khan's attention that the Mayor was working with the police and prosecution.  The police arrested and accused him, the police isolated him from everybody else but engineered an in-custody meeting with the Mayor, the police stood by and watched the entire meeting with the Mayor and recorded it on their body cameras.  When the Mayor was unprepared to immediately draft an agreement to resignation for Khan to sign he asked the police for a pen and piece of paper.  An officer then provided pen and paper to the Mayor within 26 seconds.

This Court cannot doubt that the Mayor was working with the police and was an agent of the police.  It goes without saying that police do not allow an inmate's friends to visit them in jail, not speaking through glass on a telephone, but set up in a private room, albeit a room normally used for interrogations.

If an agent of the police or prosecution, by their words or actions elicit incriminating statements from an in-custody suspect, that is interrogation and requires Miranda warnings.

Implicit in the definition of "interrogation" is that (1) the suspect is talking to the police <u>or an agent of the police</u>, and (2) the suspect is aware that he is talking to the police or one of their agents. (*Rhode Island v. Innis* (1980) 446 U.S. 291, at p. 295 [speaking with police]; *In re I.F.* (2018) 20 Cal.App.5th 735, 773 [same]; *People v. Ghent* (1987) 43 Cal.3d 739, 750–751 [speaking with psychiatrist retained by the police]; *People v. Sanchez* (1983) 148 Cal.App.3d 62, 69–70 [speaking with doctor working with police in presence of police]; see also *Estelle v. Smith* (1981) 451 U.S. 454, 467–468 speaking with prison psychiatrist pursuant to court order].)

In *People v. Sanchez* (1983) 148 Cal. App. 3d 62, 69, for another example, a doctor conducting a physical exam of a defendant, who also asked him questions which elicited incriminating responses, was found to be an agent of law enforcement. (Citing *People v. Walker* (1972) 29 Cal.App.3d 448, 453, and *Estelle v. Smith* (1981) 451 U.S. 454.)

Here, the Mayor was interviewing a defendant to secure evidence on behalf of the police. It could be argued that, if the Mayor and the police planned only to obtain Khan's consent to retire from the City Counsel, that would be a civil matter and would not require a Miranda warning, However, self-incriminating statements given by a jailed defendant during a civil investigation are also inadmissible in a criminal prosecution when the defendant is not given Miranda warnings. (*Mathis v. United States* (1968) 391 U.S. 1, Thus, such statements are involuntary as a matter of law.  Here, the resignation document is a self-incriminating statement.

Here, the Mayor promoted the idea that he was there to give Khan advise, but, in fact he was there to promote the agenda of the police.  It may well be said that his primary intention was to get Khan to agree to resign, but any such agreement would necessarily be an incriminating statement.  That is why the Mayor insisted on getting it in writing.

Though the Mayor did not directly threaten Khan, he told him he had talked to numerous players in the drama and they all thought it would be a good idea for him to resign.  Then he said he had talked to the District Attorney, and implied that the D.A. also wanted Khan to resign.  A statement to law enforcement, or their agents, is deemed involuntary if procured by an express or implied promise of benefit beyond that naturally flowing from a truthful statement, or by an express or implied threat that the failure to make a statement will result in consequences adverse

to the suspect. (*In re G*. (1975) 53 Cal. App. 3d 198, 202.)

The document which the Mayor prepared with the help of police, and had Khan sign implicated him in the criminal case for election fraud.  And that was the whole purpose of the Mayor's contact - to get Khan to sign the resignation paper which incriminated him.  At a trial of the charges of election fraud, the fact that Khan agreed to resign tends in reason to prove consciousness of guilt.  Evidence of that will be admissible against Khan in a criminal trial.  But, before eliciting Khan's agreement and his signature on that document, nobody advised him of his rights per *Miranda v. Arizona* (1966) 384 U.S. 436.  When the Mayor began to talk about Khan immediately resigning and the Mayor putting out a statement saying he had so agreed, Khan indicated that he wanted to talk to his attorney, and would talk to his attorney the next day. Thus, he clearly indicated he wanted to consult with his attorney before signing the incriminating document.

Khan was understandably very afraid of the significant criminal consequences he faced and wanted to curry favor with the Mayer, the police and the D.A.  He even thanked the Mayer for coming to "advise" him. (Exhibit A - Transcript of February 16, 2023, Jail Interview, p. 5, hereafter "Transcript.")  But he also knew the Mayer was working with the police, and apparently with the District Attorney.  So he did what many criminal defendants do, particularly those not advised of their rights to an attorney and to remain silent, he gave them what they wanted.

Thus, an arrested defendant was held incommunicado in the proverbial bowels of the police station, confronted by an agent of the police and prosecution, allowed to speak to no one except that police agent who was sent there to obtain an incriminating statement with the defendant's signature.  That police agent ignored the un-Mirandized criminal defendant's statement that he wanted to talk to his attorney and then elicited a statement in writing incriminating him. That is involuntary as a matter of law.

**C. The Court should issue a Preliminary Injunction to prevent irreparable harm to Plaintiff Shakir Khan and to the voters of District 4 who elected him:**

The Lodi City Council has voted to appoint another person to replace Shakir Khan on the Council.  On March 29, 2023, they will review applications for the position and may vote on that

10

date to install a new person in the Council seat for District 4.  Thus, absent a Preliminary Injunction to prevent it, the voters will be permanently deprived of their right of representation as early as March 29, 2023, for the remainder of Shakir Khan's term.  More urgently, the voters will be so deprived from now until the Court can make a final determination in this matter.

This harm is irreparable by definition.  Without court intervention at this time, the voters will never regain their rights to representation by the elected official of their choice and can never be compensated for that deprivation.  In *Rossito-Canty v Cuomo* (2015, ED NY) 86 F. Supp. 3d 175, the Governor of New York delayed setting a date for a special election to fill a vacancy in U.S. House of Representatives until the next general election.  Voters sued to compel the Governor to set a date as soon as possible, since voters of the congressional district were being deprived of their constitutional rights of representation. The Court stated, "The right to representation in government is the central pillar of democracy in this country.  Unjustified delay in filling a vacancy cannot be countenanced."

The *Rossito-Canty* Court found the Plaintiffs had demonstrated irreparable harm because since money damages could not make them whole, they lost their ability to participate not only in the making of the nation's policies at large, but in those that affect their daily lives. Thus, the voters were bereft of an advocate to help them navigate the morass of government bureaucracy.  Plainly, the same is true here.  The voters of District 4 in Lodi do not have an advocate to help them in City policy and decisions and money damages cannot make them whole.  They are deprived of the representation for which the majority voted, both before and after the planned appointment to fill Shakir Khan's seat on the Council.

Generally, a party seeking a preliminary injunction must establish (1) irreparable harm and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party. Additionally, the moving party must show that a preliminary injunction is in the public interest. (Oneida Nation of New York v. Cuomo, 645 F.3d 154, 164 (2d Cir. 2011) (internal quotation marks and citations omitted).

The evidence here clearly proves irreparable harm.  Plaintiffs are likely to succeed because

Khan's purported "resignation" was not a resignation, was rescinded before being accepted and was involuntary.  Surely, these issues are sufficiently serious.  Fundamental rights are as serious as it gets.  The balance of hardships tip decidedly in favor of immediate relief, i.e. preliminary injunction.  The lack of Court action will result in continued deprivation of fundamental rights of the Plaintiffs.  As the *Rossito-Canty* Court noted, "hardship to plaintiff is great and continuing." (*Rossito-Canty v Cuomo* (2015, ED NY) 86 F. Supp. 3d, at p. 200.)   The requested preliminary order will work no hardship on the Defendants at all, as they will only be prevented from filling the Council seat with a non-elected person and only so long as it takes for the Court to decide the final issues in the case.  In the mean time, under a preliminary injunction, the seat will be filled and the voters of District 4 will be represented by their elected choice of Council Members.

Finally, the Preliminary Injunction is in the public interest.  The Defendants are unconcerned with the public interest and just want to get rid of a Council Member who is not in line with their political agenda.  The public, the majority of whom voted for Shakir Khan have a strong interest in their right to representation.

**Conclusion:**

For the reasons stated, it is respectfully requested that the Court issue a preliminary injunction, to be in place until further order of the Court enjoining Defendants from preventing Plaintiff Shakir Khan from exercising all the duties and powers of his elected office, to prevent Defendants from accepting applications for, or appointing, a new Council Member in the place of Shakir Khan and enjoining Defendants from scheduling or holding and special election to fill the Council seat for District 4.

Date: March _24___, 2020

*Allen Sawyer*
N. ALLEN SAWYER