NIELSEN MERKSAMER
   PARRINELLO GROSS & LEONI LLP
   Marguerite Mary Leoni, Esq. (S.B. No. 101696)
   Christopher E. Skinnell, Esq. (S.B. No. 227093)
   Hilary J. Gibson, Esq. (S.B. No. 287862)
2350 Kerner Boulevard, Suite 250
San Rafael, CA 94901
Telephone:  (415) 389-6800
Facsimile:   (415) 388-6874
E-mail: MLeoni@nmgovlaw.com
E-mail: dlazarus@nmgovlaw.com

JANICE D. MAGDICH (S.B.No. 188278)
City Attorney
KATIE O. LUCCHESI (S.B.No. 301073)
Assistant City Attorney
CITY OF LODI
221 West Pine St.
Lodi, CA  95240
Telephone: (209) 333-6701
Email: jamgdich@lodi.gov
Email:klucchesi@lodi.gov

*Attorneys for Defendants*
*The City of Lodi, California, Lodi Mayor*
*Mikey Hothi, and the City Council of the*
*City of Lodi*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAKIR KHAN, UMER HAYAT, ADNAN BILAL, ADIL ISMAEL, SAAD KHAN, BUSHRA SHAHEEN, NASAR KHAN, MIR AFZAL KHAN, SOMIYA BIBI, MUHAMMAD ASIF, SAFDAR KHAN, and MUHAMMAD BILAL KHAN,<br><br>       *Plaintiffs*,<br><br>vs.<br><br>THE CITY OF LODI, CALIFORNIA, LODI MAYOR MIKEY HOTHI, and THE CITY COUNCIL OF THE CITY OF LODI,<br><br>       *Defendants*. | Case No. 2:23-cv-00566-DAD-KJN<br><br>**DEFENDANTS' OPPOSITION TO APPLICATION FOR TEMPORARY RESTRAINING ORDER** |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 6

II.     RELEVANT FACTS ........................................................................................... 6

III.    ARGUMENT ...................................................................................................... 9

      A.    Standard for Issuance of a Temporary Restraining Order ........................................... 9

      B.    Plaintiffs Have Unreasonably Delayed Filing The Instant Lawsuit And Application; Thus, Under The Doctrine Of Laches, The Motion Should Be Denied................................................................................................................ 11

      C.    Plaintiffs Are Unlikely To Prevail On The Merits And Hence, They Will Suffer No Irreparable Harm To Fundamental Rights, Which Is The Only Harm Asserted ...................................................................... 13

            1.    Plaintiffs do not have a property right or a voting right to keep Plaintiff Khan in office .......................................................... 13

            2.    Plaintiffs due process rights are fully protected by California's quo warranto framework, a plain, speedy, and adequate remedy to test Plaintiff Khan's right to maintain his office, thus providing a full measure of due process ........................................ 16

      D.    The Public Interest Strongly Favors Filing The District 4 Vacancy While Plaintiffs Pursue Their Quo Warranto Remedy ............................................. 18

      E.    The Balance Of The Equities In This Case Very Sharply Tips In Favor Of Defendants Because Denial Of A TRO Poses No Harm To Plaintiff.................19

IV.     CONCLUSION.................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*All. for the Wild Rockies v. Cottrell*,
    632 F.3d 1127 (9th Cir. 2011) ................................................................................................. 10

*Am. Trucking Ass'ns v. City of Los Angeles*,
    559 F.3d 1046 (9th Cir. 2009) ............................................................................................... 10

*American Mfrs. Mut. Ins. Co. v. Sullivan*,
    526 U.S. 40, 143 L. Ed. 2d 130, 119 S. Ct. 977 (1999) ..................................................... 14

*Bennett v. Yoshina*,
    140 F.3d 1218 (9th Cir. 1998) ............................................................................................... 14

*Caribbean Marine Servs. Co. v. Baldrige*,
    844 F.2d 668 (9th Cir. 1988) ................................................................................................. 10

*People ex rel. City of Commerce v. Argumedo*,
    28 Cal. App. 5th 274 (2018) .................................................................................................. 17

*Ctr. for Food Safety v. Vilsack*,
    636 F.3d 1166 (9th Cir. 2011) ............................................................................................... 10

*Gamza v. Aguirre*,
    619 F.2d 449 (5th Cir. 1980) ......................................................................................... 15, 16

*Hernandez v. Or. Legislature*,
    521 F. Supp. 3d 1025 (D. Or. 2021) ..................................................................................... 14

*Iowa Pork Producers Ass'n v. Bonta*,
    No. 1:21-cv-01663, 2021 U.S. Dist. LEXIS 227124 (E.D. Cal. Nov. 24, 2021) ............... 12

*Klein v. City of San Clemente*,
    584 F.3d 1196 (9th Cir. 2009) ............................................................................................... 10

*Kuhn v. Thompson*,
    304 F. Supp. 2d 1313 (M.D. Ala. 2004) ................................................................. 14, 15, 16, 17

*Nicolopulos v. City of Lawndale*,
    91 Cal. App. 4th 1221 (2001) .......................................................................................... 17, 18

*Oakland Municipal Improvement League v. City of Oakland*,
    23 Cal. App. 3d 165 (1972) ................................................................................................... 19

*R.R. Comm'n of Tex. v. Pullman Co.*,
    312 U.S. 496 (1941) ............................................................................. 13

*Rossito-Canty v Cuomo*,
    86 F. Supp. 3d 175 (E.D.N.Y. 2015) ............................................... 13, 18

*Smith v. Winter*,
    717 F.2d 191 (5th Cir. 1983) ............................................................... 16

*Snowden v. Hughes*,
    321 U.S. 1, 64 S. Ct. 397, 88 L. Ed. 497 (1944) ................................. 16

*Soules v. Kauaians for Nukolii Campaign Comm.*,
    849 F.2d 1176 (9th Cir. 1988) ............................................................. 14

*Stokes v. City of Visalia*,
    No. 1:17-cv-01350-DAD-SAB, 2017 U.S. Dist. LEXIS 204477 (E.D. Cal. Dec. 11,
    2017) .................................................................................................... 10

*Stormans, Inc. v. Selecky*,
    586 F.3d 1109 (9th Cir. 2009) ............................................................. 10

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
    240 F.3d 832 (9th Cir. 2001) ............................................................... 10

*Thrasher v. Bd. of Supervisors*,
    765 F. Supp. 896 (N.D. Miss. 1991) (noting that this principle avoids the use of
    Section 1983 as a panacea for run-of-the-mill election irregularities) ......... 14

*Winter v. NRDC, Inc.*,
    555 U.S. 7 (2008) ................................................................................. 10

**Statutes**

52 U.S.C. § 10301 ................................................................................... 7

Cal. Code of Civ. Proc. § 801 ................................................................ 6

Cal. Code of Civ. Proc. §§ 801 et seq. ............................................. 17, 19

Cal. Code Civ. Proc. § 806 ............................................................... 17, 18

Cal. Code Civ. Proc. § 807 ............................................................... 17, 18

Cal. Gov. Code § 1021 ........................................................................... 17

Cal. Gov. Code § 1750 ........................................................................... 12

Cal. Gov. Code § 1770 ........................................................................... 12

Cal. Gov. Code § 36512 ............................................................................................. 6, 7, 19

42 U.S.C. § 1983 ...................................................................................................... 7, 15

**Other Authorities**

100 Ops.Cal.Atty.Gen. 26 (2017) ................................................................................ 17

101 Ops.Cal.Atty.Gen. 16 (2018) ................................................................................ 17

103 Ops.Cal.Atty.Gen. 33 ............................................................................................. 17

United States District Court for the Eastern District of California Local Rule 231(b) ......................... 12

## I.    INTRODUCTION.

Plaintiffs' inexplicably delayed, and now "urgent" application for immediate and drastic relief should be denied. Plaintiffs seek an order restraining the City Council of the City of Lodi from complying with a state law requiring it, within 60 days, to fill a vacancy created by the resignation of Plaintiff Shakir Khan from his office as City Council member for District 4. Cal. Gov. Code § 36512(b). Plaintiffs fail to carry their burden to demonstrate such extraordinary relief is warranted.  First, they are unlikely to prevail on the merits of their claims as federal constitutional rights are not implicated in the actions of the City Council.  Second, the only "irreparable harm" Plaintiffs posit is a violation of those (non-existent) constitutional rights.  But even if their federal constitutional rights were implicated in the City's action to fill the District 4 vacancy, California law provides Plaintiffs with a full measure of due process through the plain, speedy and adequate remedy of quo warranto to test the effectiveness of Plaintiff Khan's resignation and the subsequent occurrence of a vacancy that the Council is now obligated to fill.  Cal. Code of Civ. Proc. § 801. Plaintiffs have not availed themselves of that remedy. Indeed, the Superior Court in a quo warranto proceeding is empowered adjudicate the validity of Plaintiff Khan's resignation, remove the City Council's appointee from office if it finds Plaintiff Khan's resignation was not valid, reinstate Plaintiff Khan to office, and award costs. Hence, there really is no urgency meriting the expedited intervention of this Court to stop the City Council's proceedings to fill the vacancy.  Finally, enjoining the Council's proceedings harms District 4 residents who will remain without a representative on the City Council far longer than the 60 days contemplated by statute.

## II.    RELEVANT FACTS.

On February 16, 2023, Plaintiff Shakir Khan, then a member of the City Council of the City of Lodi for District 4, was arrested at his home on 14 counts of election fraud under the California Elections Code.  (Request for Judicial Notice ["RJN"], Ex. 1.) Later that day, he signed a letter of resignation from the City Council "effective immediately." [1] (Ex Parte App. for TRO, Ex. B.) Under

---

[1] Five days later Plaintiff Khan was arraigned on an information regarding illegal gambling, money laundering, tax evasion, and Employment Development Department (EDD) fraud charges. (RJN Ex. 12.) The Complaint and the Application for a TRO herein are replete with unsubstantiated allegations that Plaintiff Kahn's Fifth Amendment right against self-incrimination was violated in the

---

California law, the letter commenced a 60-day period, expiring on April 15, 2023, within which Defendant City Council is obliged to take action to fill the vacancy on the City Council.  Cal. Gov. Code § 36512(b) ("If a vacancy occurs in an elective office provided for in this chapter, the council shall, within 60 days from the commencement of the vacancy, either fill the vacancy by appointment or call a special election to fill the vacancy.").

One week later, on Thursday, February 23, 2023, the City Attorney of the City of Lodi received an email from Plaintiff Khan's attorneys stating, in part (RJN Ex. 2):

> I represent Lodi City Councilmember Shakir Khan.  I am in the process of preparing a complaint to be filed in the Eastern District of California for injunctive and declaratory relief under (Section 2 of the Voting Rights Act of 1965; (52 U.S.C. § 10301); Section 8 of the National Voter Registration Act of 1993 (52 U.S.C. § 20507); Voting Provisions of the Americans with Disabilities Act (codified at 42 U.S.C. § 12101 et seq.); First and Fourteenth Amendments to the United States Constitution; 42 U.S. Code § 1983).  The assumption based on news reports, is that the City of Lodi has removed Mr. Khan from his elected office.  Please verify if the City of Lodi has in fact removed Mr. Khan from his elected position as a Lodi City Councilmember?  Likewise, Mr. Khan does not intend to resign his position, nor did he authorize any person to resign on his behalf or file any documents purporting to be Mr. Khan's resignation,

On Friday, February 24, 2023, the City Attorney advised Mr. Sawyer by email that the City Council would be meeting in closed session on the next Tuesday, February 28, 2023 to discuss the matter of his threat of litigation. (RJN Ex. 3)

The City Council did meet on February 28, 2023.  The City Attorney reported the following statement of Council action out from the closed session meeting as required by law:

> In regard to Item B-a), discussion and direction was given by the Council by unanimous vote to set a Special Meeting for March 7, 2023, at 7:00 a.m. ***to present options for filling the vacancy in District 4***, based on the resignation of Shakir Khan, which was effective on February 16, 2023. For Initiation of Litigation under Government Code §54956.9(d)(4), there was no reportable action. (Emphasis added.)

(RJN Ex. 4)

---

meeting between him and Defendant Hothi. Compl. ¶¶ 14-19; App. for TRO 7:17 – 9:17.) That issue is properly addressed in the pending criminal proceedings against Plaintiff Khan.

The City Council then held a special meeting on March 7, 2023, to provide direction to the City staff regarding Council's desired option to fill the vacancy. (RJN Ex. 5.) Plaintiff Khan appeared and spoke to the agenda item during the public comment period.  The City Council ordered that the vacancy be filled by appointment.  (Decl. of Magdich ¶ 4.) Immediately after the March 7 special meeting, the City issued a press release and posted it to the City's website (https://www.lodi.gov/CivicAlerts.aspx?AID=351) announcing that the vacancy would be filled by appointment and that:

> On Tuesday, March 14 at 7am, the City Council will hold a special meeting at the Loel Senior Center at 105 S Washington St. to hear public comment and approve a candidate application, timeline, including meeting schedules, and interview questions to ask the candidates at a future public meeting.

(RJN Ex. 6.)

The Council held the special meeting on March 14, 2023, to adopt procedures and a timeline for filling the vacancy. (RJN Ex. 7.) Plaintiff Khan did not attend that meeting.  The City Council approved the application process and timeline presented in the staff report to the City Council.  (RJN Ex. 7; Decl. of Magdich ¶ 5.)  After the March 14 special meeting, the City issued another press release posting the Council-approved procedures and timeline for filing the vacancy, which provide in pertinent part:

> **Friday, March 24, no later than 5:00 p.m.**
> Last day to submit candidate applications to the City Clerk via the online portal.
> City Clerk will forward all applications received by March 24th at 5:00 p.m. to members of the City Council for review.
> **…**
> **Wednesday, March 29 at 7:00 p.m. Special Meeting – LOEL Senior Center**
> City Council to interview candidates, hear public comment, discuss candidates, and appoint the District 4 Council Member. If appointed at this meeting, the District 4 Council Member will be sworn in by City Clerk.
> **Wednesday, April 5 at 5:30pm – Carnegie Forum**
> If needed, continue discussion and appoint District 4 Council Member. If appointed at this meeting, the District 4 Council Member will be sworn in by City Clerk.

(RJN Ex. 8.) The City also posted a banner on the home screen of its website announcing the availability of applications for appointment to fill the vacancy and advertised the vacancy, soliciting applicants with

posters distributed in District 4 and City facilities.  (RJN Ex. 10 & Ex. 13; Decl. of Magdich ¶¶ 6&7); see also here:  https://www.lodi.gov/.)

On March 23, 2023, the City Attorney received a second email from Plaintiffs' attorney. (RJN Ex. 9.) (Note, the City Attorney had not heard from Plaintiffs' attorney since his initial communication on February 23, 2023.  The March 23, 2023 email stated that Plaintiffs' attorney "intended" to file an application for an exparte TRO to stop the City Council's proceedings to fill the District 4 vacancy:

> I intend on filing an application for an ex parte TRO in the Eastern District of California this week to stop the filling of Mr. Khan's District Council seat in Lodi.
> I am again asking if the City of Lodi will refrain from filling Mr. Khan's Council seat?
> Likewise, I am asking if the City of Lodi will allow Mr. Khan to continue to perform his functions as a duly elected Council member?
> Absent an agreement in the affirmative to both questions listed above, a temporary restraining order is necessary to preserve my client's and voters' Constitutional Rights.
> Please advise as to your availability next week for a hearing and I will do my level best to accommodate your schedule.
> Obviously, a hearing needs to occur at least a day before the scheduled Lodi City Council self created decision date of March 29, 2023.
> Thank you for your prompt attention to this matter.
> Regards,
> Allen Sawyer

(RJN Ex. 9; Decl of Magdich ¶ 9.) Contrary to the facts alleged in the Declaration of Mr. Sawyer, filed in support of issuance of a TRO (Decl. of Sawyer at 2:2), the City Attorney responded to that email advising:

> I have scheduled a closed session with the City Council for 7am, Tuesday, March 28th to discuss your email.  Due to Council schedules and noticing requirements under the Brown Act, Tuesday morning is the soonest I can meet with the Council.
> As to my schedule for next week, I can be available after 10am on Tuesday or anytime on Wednesday; however, I am waiting to hear from outside counsel as to their availability and will advise you of the same as soon as possible.

(Decl. of Magdich ¶ 11.)

By 5:00 P.M. on March 24, 2023, the City had received four applications to fill the District 4 vacancy and it has been determined that the applicants are qualified for appointment.  The applications have been published with the agenda for the March 29, 2023 Special Meeting of the City Council.  On

Sunday, March 26, 2023 at approximately 12:50 P.M., Plaintiffs' attorney's law clerk notified the City Attorney by email about the filing of this action. (Decl. of Magdich ¶ 11.)

## III.   ARGUMENT.

### A.   Standard for Issuance of a Temporary Restraining Order.

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. NRDC, Inc.*, 555 U.S. 7, 22 (2008). The standard for issuing a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20); *see also Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011) ("After *Winter*, 'plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction.'"); *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). A plaintiff seeking a preliminary injunction *must make a showing on all four of these prongs. All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). The Ninth Circuit has also held that "[a]  preliminary injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Id.* at 1134-35 (quoting *Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008) (en banc)).

The party seeking the injunction bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009); *see also Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988); *Stokes v. City of Visalia*, No. 1:17-cv-01350-DAD-SAB, 2017 U.S. Dist. LEXIS 204477, at *6-7 (E.D. Cal. Dec. 11, 2017).

Plaintiffs have not carried their burden:

---

First, this application is inexplicably delayed in the context of the 60-day time period within which the City is required to fill the vacancy created when Plaintiff Khan resigned.  That unexplained delay belies Plaintiffs' assertions that they will suffer irreparable harm if a TRO does not issue.

Second, Plaintiffs are unlikely to prevail on the merits of their claims and, hence, they will suffer no harm to fundamental rights, which is the only harm asserted. (App. at 11:2-4.) Neither Plaintiffs as a class, nor Plaintiff Khan as an individual, has a cognizable federal property right or a voting right to maintain Plaintiff Khan in office as the Council Member for District 4. Moreover, California State law provides an exclusive and robust remedy for Plaintiffs and Plaintiff Khan to have his alleged right to hold office adjudicated through a Petition for a Writ of Quo Warranto, which fully protects his federal due process rights. Cal. Code of Civil Proc. §§ 801-811.

Third, the public interest and the balance of the equities clearly favor Defendants and denial of a TRO so the District 4 residents will have a representative on the Council Council as soon as possible by appointment rather than after a long delay waiting for the pending resolution of Plaintiffs' claims, which should be in State court employing quo warranto proceedings.

**B.      Plaintiffs Have Unreasonably Delayed Filing The Instant Lawsuit And Application; Thus, Under The Doctrine Of Laches, The Motion Should Be Denied.**

Unexplained delay in seeking preliminary injunctive relief may undercut claims that Plaintiff is threatened with "irreparable injury."  *Miller vs. California Pacific Medical Center,* 991 F.2d 536, 544 (9th Cir. 1993), vacated on other grounds; *Polymer Technologies, Inc. vs. Bridwell,* 103 F.3d 970, 976 (Fed. Cir. 1996); *Tough Traveler Ltd. vs. Outbound Products*, 60 F.3d 964, 969 (2d Cir. 1995). Plaintiffs' delay is significant, and moreover, completely unaddressed and unexplained. Delay needs to be considered in the context of the 60-day time period in which the City Council is statutorily required to act to fill a vacancy, and the approved procedures and timeline to fill the vacancy put in place by the City Council and broadly advertised.  Applications by four qualified District 4 voters have been received and these voters are scheduled to be interviewed in a public process on March 29, 2023, and one of them potentially appointed, thus complying with state law.  Despite the steady progression of notice, publicity, and deadlines, and Plaintiffs' undisputable awareness of them, Plaintiffs waited to file their lawsuit until March 24, 2023 and did not bother to notify the City about the pending action until

electronic service of the filings to the City Attorney via email on Sunday, March 26, 2023, just two

business days before the City Council will consider applicants to fill the District 4 vacancy.

Local Rule 231(b) Court provides:

Timing of Motion. In considering a motion for a temporary restraining order, the Court will consider whether the applicant could have sought relief by motion for preliminary injunction at an earlier date without the necessity for seeking last-minute relief by motion for temporary restraining order. Should the Court find that the applicant unduly delayed in seeking injunctive relief, the Court may conclude that the delay constitutes laches or contradicts the applicant's allegations of irreparable injury and may deny the motion solely on either ground.

In another case, this Court has denied expedited consideration and extraordinary relief based on

a record that completely failed to explain delay in filing the complaint and application:

The court finds that the present record fails to explain why this case could not have been presented to the court in a far timelier manner. The "urgency" presented here is largely of plaintiff's own making. Therefore, the court will not expedite consideration of the pending motion in the manner suggested by plaintiff. The court recognizes that—at least according to plaintiff—the financial implications of Proposition 12 going into effect may be enormous, but that does not change the procedural history of this case.

*Iowa Pork Producers Ass'n v. Bonta*, No. 1:21-cv-01663, 2021 U.S. Dist. LEXIS 227124, at *6 (E.D.

Cal. Nov. 24, 2021).  Here, the "urgency" Plaintiffs claim is also the product of their own making.  They

announced their intent to file this action over one month ago through their attorney's communication

with the City Attorney on February 23, 2023, and then made no effort to communicate with the City

until Thursday, March 23, 2023.

The delay is prejudicial to the Court, the public, and the City Council. Plaintiffs' delay severely

truncates the time the Court has to consider the novel issues presented in the Complaint.  Plaintiffs do

not cite even one California statute, judicial opinion, or attorney general opinion considering under

what circumstances a resignation by a *City Council member* might be considered "involuntary,"

whether a resignation can be withdrawn and if so, under what circumstances, whether magic words are

indeed required for a written resignation to be effective, whether resignations are "self-executing" or

need to be "accepted" by the City Council, or the construction of a writing stating that the "best course

of action" is to resign "effective immediately."     *See* Cal. Gov. Code §§ 1750 & 1770.[2] Instead,

---

[2] In addition, the Complaint is laden with salacious allegations of political intrigue, plotting against Plaintiff Kahn, and collusion to violate his civil rights in the context of the criminal proceedings

Plaintiffs impose on the Court to be the first to determine these novel issues of state law on an extremely expedited basis.[3]

Plaintiffs' delay harms the residents of Council District 4 because it extends the time they will be without a resident-representative on the City Council. *See Rossito-Canty v Cuomo*, 86 F. Supp. 3d 175 (E.D.N.Y. 2015) ("The right to representation in government is the central pillar of democracy in this country. Unjustified delay in filling a vacancy cannot be countenanced.") In this case, issuance of a TRO will cause unjustified delay, almost certainly in excess of the 60 days contemplated by state law.

Plaintiffs' delay also prejudices the functioning of the City Council that will be forced to operate with four members for a longer period of time, making it more difficult to establish a quorum in the event of absences, and achieve majority votes, thus risking deadlocks on important civic issues. The Council will also be deprived of particularized input from a representative of the District 4 community.

## C. Plaintiffs Are Unlikely To Prevail On The Merits And Hence, They Will Suffer No Irreparable Harm To Fundamental Rights, Which Is The Only Harm Asserted.

### 1. Plaintiffs do not have a property right or a voting right to keep Plaintiff Khan in office.

The thrust of the complaint appears to be that Plaintiff Khan's resignation from the City Council is ineffective because it was involuntary. Thus, the First Claim for Relief alleges Plaintiff class, who are voters in Council District 4, is deprived of its First and Fourteenth Amendment right to vote and be represented by the person for whom they voted in 2020, and they are also deprived of equal protection because the voters in the other Council districts have their representatives still in office. (Compl. p. 7, First Claim for Relief.[4]) In the Second Claim for Relief Plaintiffs allege that the foregoing violations also constitute a deprivation of procedural and substantive due process. (Compl. p. 8.) While the

---

pending against him. However, the two thin declarations filed with the application for a TRO are devoid of any competent evidence supporting these allegations.

[3] Indeed, this case may be appropriate for the application of "Pullman" abstention given the ready availability of the State quo warranto procedures for adjudicating exactly these types of questions. *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941). This case presents unsettled questions of state law, that could be dispositive of the case or would materially alter the constitutional questions presented.

[4] Defendants also dispute the ability of Plaintiffs to qualify as a class.

complaint contains an allegation that Plaintiff Khan is the only Muslim on the City Council (¶ 7), there is no allegation of intentional racial or religious discrimination. And importantly, there is no allegation of state laws and patterns of state action that systematically deny equality in voting to Plaintiffs.[5]

Plaintiffs are unlikely to prevail on these federal claims.  Plaintiffs cite no case demonstrating that the facts alleged constitute a violation of rights protected by the federal Constitution or statutes. To the contrary, federal case law is uniform that alleged isolated violations of neutral state laws applicable to state elections, voting rights, and elected officials do not rise to the level of a federal constitutional or statutory violation. *Soules v. Kauaians for Nukolii Campaign Comm.*, 849 F.2d 1176, 1183-84 (9th Cir. 1988) (federal law does not provide a remedy for allegations of "garden variety" state law violations in disputes over right to seek or hold office); *Bennett v. Yoshina*, 140 F.3d 1218, 1226 (9th Cir. 1998) and cases cited therein; *Thrasher v. Bd. of Supervisors*, 765 F. Supp. 896, 901 (N.D. Miss. 1991) (noting that this principle avoids the use of Section 1983 as a panacea for run-of-the-mill election irregularities).

In *Kuhn v. Thompson*, 304 F. Supp. 2d 1313, 1317 (M.D. Ala. 2004), the Alabama Court of the Judiciary removed Justice Roy Moore from his *elected* position as Chief Justice of the Alabama Supreme Court. Plaintiff voters who had voted for Justice Moore sought declaratory and injunctive relief injunction requiring Defendants to reinstate Justice Moore, and a declaration that the decision to remove Moore violated Plaintiffs' First and Fourteenth Amendment Rights.  *Id*. at 1328.   The District Court first reiterated Plaintiffs' burden of proof:

> To state a claim for relief under Section 1983, Plaintiffs must allege that a person acting under color of state law deprived them of a right, privilege, or immunity secured by the Constitution, laws, or treaties of the United States. *See, e.g., American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49-50, 143 L. Ed. 2d 130, 119 S. Ct. 977 (1999). … [T]he issue before this Court is

---

[5] The Complaint does not allege Plaintiffs Kahn has a personal right to hold office on the City Council, and properly so because Plaintiff Kahn has no property interest in the office of Council Member for District 4. *See Hernandez v. Or. Legislature*, 521 F. Supp. 3d 1025, 1035 (D. Or. 2021) ("Plaintiff cannot not claim a property interest in his office itself. 'The decisions are numerous to the effect that public offices are mere agencies or trusts, and not property as such. [...] In short, generally speaking, the nature of the relation of a public officer to the public is inconsistent with either a property or a contract right.' *Taylor v. Beckham*, 178 U.S. 548, at 577, 20 S. Ct. 890, 44 L. Ed. 1187 (1900); *see also Burks v. Perk*, 470 F.2d 163, 165 (6th Cir. 1972) (noting that ""[p]ublic office is not property within the meaning of the Fourteenth Amendment.""").

---

whether Defendants' removal of Moore deprived Plaintiffs of a federally protected right, to wit, their constitutional rights under the Fourteenth Amendment.

*Kuhn*, 304 F. Supp. 2d at 1328-29.  The Court then ruled that Plaintiffs had failed to state a federal claim under 42 U.S.C. § 1983:

> Plaintiffs argue that they had a property interest in their votes cast for Moore in his election to office and contend that Defendants' actions in the removal of Moore denied them due process. However, Plaintiffs cannot establish that their rights to vote constitute a sufficient property interest to give rise to a Due Process claim. *See Johnson v. Hood*, 430 F.2d 610, 612 (5th Cir. 1970). In *Johnson*, the plaintiffs alleged that the county election commission's decision to reject ten ballots as improper was arbitrary, capricious and without any reasonable basis. In a *per curiam* opinion ordering dismissal, the Former Fifth Circuit Court of Appeals rejected this argument and ruled that these facts, even if true, failed to support a violation of the Due Process Clause. The Court held that

>> The right to vote in a state election, in itself, is not right secured by the Constitution or by federal law. Thus, even an improper denial of the right to vote for a candidate for a state office achieved by state action "* * * is not a denial of a right of property or liberty secured by the due process clause."

> *Johnson*, 430 F.2d at 612 (citation omitted). Accordingly, as Plaintiffs' rights to vote alleged in their Complaint are premised upon the rights to vote for a candidate for a state office, namely Moore, said rights do not constitute a sufficient property interest to give rise to a Due Process claim.

*Kuhn*, 304 F. Supp. 2d at 1329.

Turning to Plaintiffs' Equal Protection Claim, the Court held that those allegations also failed to state a claim for a violation:

> It is undeniable that a fundamental right to vote exists. The United States Supreme Court has held that voting is a fundamental right, secured by the equal protection clause. *Harper v. Virginia State Bd. of Elections*, 383 U.S. 663, 16 L. Ed. 2d 169, 86 S. Ct. 1079 (1966). Today, the right to vote in state as well as in federal elections, and the protection afforded that right by the federal Constitution, are unquestioned. *Id.; Reynolds v. Sims*, 377 U.S. 533, 12 L. Ed. 2d 506, 84 S. Ct. 1362 (1963). …

> The constitutional right established in *Reynolds v. Sims*, however, is not absolute and is properly limited by respect for the political and federal framework established by the Constitution. This framework leaves the conduct of state elections to the states." *Gamza v. Aguirre*, 619 F.2d 449, 453 (5th Cir. 1980). Therefore, this Court must

>> recognize a distinction between state laws and patterns of state action that systematically deny equality in voting, and episodic events that, despite non-discriminatory laws, may

result in the dilution of an individual's vote. Unlike systematically discriminatory laws, *isolated events that adversely affect individuals are not presumed to be a violation of the equal protection clause.*

*Id.* (emphasis supplied).

*Kuhn*, 304 F. Supp. 2d, at 1331; *see also Gamza v. Aguirre*, 619 F.2d 449, 453 (5th Cir. 1980) ("We must, therefore, recognize a distinction between state laws and patterns of state action that systematically deny equality in voting, and episodic events that, despite non-discriminatory laws, may result in the dilution of an individual's vote. Unlike systematically discriminatory laws, isolated events that adversely affect individuals are not presumed to be a violation of the equal protection clause. See, e.g., *Powell v. Power*, 436 F.2d 84, 88 (2d Cir. 1970). The unlawful administration by state officers of a non-discriminatory state law, 'resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination.' *Snowden v. Hughes*, 321 U.S. 1, 8, 64 S. Ct. 397, 401, 88 L. Ed. 497 (1944).")

The Court then ruled that absent allegations of intentional discrimination or state laws and patterns of state action that systematically deny constitutional rights, Plaintiffs' claims did not rise to the level of a federal constitutional violation. *Kuhn*, 304 F. Supp. 2d at 1332. The same is true in this case.

Finally, the Court in *Kuhn v. Thompson* also held that the right to vote did not extend to keeping the voters' choice of candidates in office protected from procedures for removal and replacement:

Plaintiffs' argument that Defendants' actions in removing Moore implicated their voting rights, which had already been exercised in Moore's election, is unavailing. This argument is similar to one rejected by the Fifth Circuit Court of Appeals in *Smith v. Winter*, 717 F.2d 191 (5th Cir. 1983). In *Smith*, three African-American county board of education members challenged Mississippi's recall election procedure under Section 2 of the Voting Rights Act by alleging that the recall proceedings abridged the minorities' rights to effective votes by threatening the removal of officials for whom those votes were cast. The Fifth Circuit Court of Appeals considered the scope of the "right to vote" protected by the Voting Rights Act and, applying the Former Fifth Circuit's broad interpretation of said right, determined that the right to vote cannot be read so broadly as to support the notion that "the right to vote entails not only a right for the citizen to make his voice heard in the electoral process, but the right as well to maintain his choice in the public office if successful." *Id.* at 198. The Fifth Circuit elucidated that "if the right to vote stops short of the right to hold office, it necessarily also stops short of any absolute right to resist recall from office," and concluded that the recall process did not threaten minority

members' rights to an effective vote, and hence, did not give rise to claims under the Voting Rights Act. *Id.* at 198-199.

*Kuhn*, 304 F. Supp. 2d at 1334-35.

> **2.**     **Plaintiffs due process rights are fully protected by California's quo warranto framework, a plain, speedy, and adequate remedy to test Plaintiff Khan's right to maintain his office, thus providing a full measure of due process.**

Quo warranto is the legal action to resolve disputes concerning the right to hold public office or exercise a franchise. California law provides that the action may be brought either by the Attorney General or by others acting with the consent of the Attorney General. Cal. Code of Civ. Proc. §§ 801 et seq.  In almost all instances, quo warranto actions provide the only method to challenge a claim to public office under California Law.  *Nicolopulos v. City of Lawndale*, 91 Cal. App. 4th 1221 (2001). In such a proceeding, the court is authorized to remove an usurper from office and reinstate the duly entitled office holder. Cal. Code Civ. Proc. §§ 806, 807. For example, in 103 Ops.Cal.Atty.Gen. 33, the ousted council member (the "Relator"), challenged his successor's right to hold a seat on a City council on the basis that there was no vacancy under state law, the analogous circumstance to Plaintiffs' claims in this case.  The Attorney General noted: "Stated otherwise, in this context it is Relator's eligibility, rather than Defendant's, that is ultimately at issue. Despite its unusual framing, this circumstance has been found to be a proper use of a quo warranto proceeding."

In ruling that quo warranto was appropriate, the Attorney General further stated:

> Accordingly, where the existence of a vacancy is summarily declared but disputed, as it was here, the ousted officer is assured that "he may always have his day in court before it can be conclusively adjudged against him that the office was vacant at the time the [successor's] appointment was made.'" (Quoting *Klose v. Superior Court,* 96 Cal.App.2d 913, 918 (1950).)

In addition, the Attorney General has authorized quo warranto actions in which there is no other person asserting entitlement to the office. *People ex rel. City of Commerce v. Argumedo*, 28 Cal. App. 5th 274 (2018) (quo warranto proceeding concerning whether defendant's misdemeanor conviction for obstruction of justice constituted a disqualifying conviction under Gov. Code § 1021.); 100 Ops.Cal.Atty.Gen. 26 (2017) (application of City of Bell, as Relator, for leave to sue in quo warranto to oust member from the city council on the ground that she was absent from all regular city council meetings without permission for 60 days); 101 Ops.Cal.Atty.Gen. 16 (2018) (application of City of

Dixon for leave to sue city council member from the District 4, in quo warranto to oust him from office on the ground of non-residency in the district). Curiously, Plaintiffs have not availed themselves of the quo warranto procedures or even indicated an intent to do so in the last 30 days.

Importantly, California's courts have ruled that the quo warranto procedure satisfies constitutional due process for remedying any claimed procedural irregularities leading to the city council's declaration of a vacancy in a council seat. *See Nicolopulos v. City of Lawndale*, 91 Cal. App. 4th 1221, 1229 (2001):

> Appellant's complaint alleges the city council deprived him of his office without federal procedural due process. But there is no violation of due process, and hence no federal constitutional violation, if the post deprivation remedies under state law themselves provide redress in a manner that satisfies due process. The no exhaustion doctrine on which appellant relies is beside the point. (*Parratt v. Taylor* (1981) 451 U.S. 527, 537, 538, 543-544 [101 S. Ct. 1908, 1913-1914, 1914, 1916- 1917, 68 L. Ed. 2d 420]; *Brosterhous v. State Bar, supra*, 12 Cal. 4th 315, 326, fn. 6.) The state quo warranto procedure here provides redress for the alleged deprivation. Upon successful trial of the quo warranto action, the applicant is restored to office and entitled to damages sustained by reason of the usurpation. (Code Civ. Proc., §§ 806, 807.) …

> The quo warranto procedure satisfies constitutional due process for remedying any claimed procedural irregularities leading to the city council's declaration of a vacancy in appellant's office. (*Parratt v. Taylor, supra*, 451 U.S. 527, 543-544 [101 S. Ct. 1908, 1916-1917].) Appellant is wrong, therefore, in asserting that by couching one cause of action under the federal Civil Rights Act he can ignore the quo warranto procedure.

**D.      The Public Interest Strongly Favors Filing The District 4 Vacancy While Plaintiffs Pursue Their Quo Warranto Remedy.**

The TRO should be denied in the public interest.  Issuing a TRO will bring Defendant City Council's proceedings to fill the vacancy to a halt and thus actually deprive the residents of Council District 4 of a resident representative on the City Council for an extended period of time.  The right to representation in government is the central pillar of democracy. Unjustified delay in filling a vacancy cannot be countenanced. *Rossito-Canty v. Cuomo*, 86 F. Supp. 3d at 180. There are three categories of critical losses when a seat on the City Council is unfilled: first, the loss to persons and institutions in the district who are deprived of their power to help decide both the City's policies at large, and those municipal decisions that impact the particular needs and views of the district; second, the loss to those

in the district of a vital individual channel to and from the government's bureaucracy and its benefits; and, third, the loss to the City as a whole which gives up the input from a unique group of people represented by an individual with the opportunity to contribute meaningfully to municipal debates and policy and whose views should be available to temper those of colleagues. *See id.* at 181.  When an appointment is to be made, State law contemplates the vacancy can persist no longer than 60 days.  Cal. Gov. Code § 36512(b).  Defendant City Council has taken the expedited course and determined to fill the vacancy by appointment to get a District 4 resident representative in that seat as quickly as possible. Issuance of a TRO will cause unjustified delay, almost certainly in excess of 60 days as the parties litigate the issues either in these proceedings or (properly) in a quo warranto action.

Principles of comity also counsel that the Court defer to the special framework established by the California Legislature in the quo warranto statutes to determine issues of the nature presented by Plaintiffs' Complaint. Quo warranto is structured to protect the rights of the public and of all contenders to an elected public office. The remedy of quo warranto is vested in the People, and not in any private individual or group, because the question of who has the right to hold a public office is a matter of public concern, not a private dispute. *Oakland Municipal Improvement League v. City of Oakland*, 23 Cal. App. 3d 165, 170 (1972). In the quo warranto action, the superior court will decide who is lawfully entitled to the office in question, exclude the usurper, reinstate the rightful office holder, and assess costs.  The court may also, at its discretion, impose a fine on the defendant of up to $5,000. Cal. Code of Civ. Proc. §§ 801 et seq.

**E.      The Balance Of The Equities In This Case Very Sharply Tips In Favor Of Defendants Because Denial Of A TRO Poses No Harm To Plaintiffs.**

Finally, it is apparent that the balance of equities in this case strongly favors the Defendants and thus denial of a TRO.  On the one hand, Plaintiffs do not risk irreparable harm if the Court denies a TRO because they are very unlikely to prevail on the merits. In addition, they can vindicate their rights through the robust remedy of quo warranto, thus achieving a full measure of due process. In addition, issuance of a TRO will harm the public interest, delay representation to the residents of District 4,

interfere with Defendants' compliance with state law, and frustrate the State's exclusive method to address claims such as those presented in the Complaint through quo warranto proceedings.

## IV.    CONCLUSION

Plaintiffs' request for a TRO should be denied.

Dated:  March 27, 2023                          Respectfully submitted,
                                                NIELSEN MERKSAMER
                                                PARRINELLO GROSS & LEONI

By: _____
                                                Marguerite Mary Leoni
                                                *Attorneys for Defendants*